IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-00716-FL

| | |
|---|---|
| MARIA PRICE, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-22, -24] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Maria Price ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied and Defendant's Motion for Judgment on the Pleadings be granted, upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on May 13, 2009, alleging disability beginning February 22, 2009. (R. 71, 136). Her claim was denied initially and upon reconsideration. (R. 71-72). A hearing before the Administrative Law Judge ("ALJ") was held on April 7, 2011, at which Claimant was represented by counsel and testified, along with another

witness and a Vocational Expert ("VE"). (R. 36-70). On April 22, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 22-31). On September 7, 2012, the Appeals Council denied Claimant's request for review. (R. 2-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors: (1) the ALJ improperly assessed the medical opinions in violation of 20 C.F.R. § 404.1527; (2) the ALJ improperly evaluated Plaintiff's credibility and evidence of her post-stroke loss of stamina resulting in an RFC not supported by substantial evidence; and (3) the Appeals Council failed to consider new and material evidence. Pl.'s

Mem. [DE-23] at 13-20.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 31). At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 24). Next, the ALJ determined Claimant had the following severe impairments: hemorrhagic cerebrovascular accident and residual cognitive disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living and social functioning, moderate deficiencies of concentration, persistence and pace, and no episodes of decompensation of extended duration. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with limitations (*e.g.*, lifting or carrying no more than 10 pounds occasionally with the right upper extremity; no crawling or climbing of ladders, ropes, or scaffolds; frequent but not constant use of the right upper extremity for fine and gross manipulations; avoidance of concentrated exposure to hazards; and performing only unskilled, routine, repetitive

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

tasks). (R. 26). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 26-29). At step four, the ALJ concluded Claimant did not have the RFC to perform any past relevant work. (R. 30). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 30-31).

B.  **Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's administrative hearing, Claimant was fifty years old and resided in a home in Seven Springs, North Carolina with her husband and 18-year-old son. (R. 30, 40). Claimant is a high school graduate and took non-degree courses at a community college. (R. 46). Claimant last worked with her husband in a family owned construction business as a general contractor from 1998 until the alleged onset date, February 22, 2009. (R. 166). Claimant kept the company books, scheduled jobs and subcontractors, and assisted her husband with physical labor, such as framing, painting, roofing, and moving building materials. (R. 57-58, 170).

Claimant suffered a hemorrhagic stroke on February 22, 2009. (R. 46-47, 157). As a result, Claimant experiences fatigue, right arm weakness, and memory problems, which interfere with her ability to work. *Id.*; (R. 48-49, 53-56). Claimant can lift a gallon of milk with her right arm, but cannot hold it for long. (R. 47). Claimant also has residual neurological problems, such as spontaneous, inappropriate laughter for extended periods and short term memory loss. (R. 48-49). Claimant cannot remember things she is supposed to do and utilizes lists to assist in completing daily activities such as grocery shopping. (R. 49). She has also started taking medication that she believes is helping with her memory. *Id.* Claimant watches television shows, but cannot concentrate and will

5

watch the same show multiple times because she cannot remember what happened. (R. 55). Prior to Claimant's stroke, she slept approximately six hours a night, but now she is frequently physically and mentally tired, sleeping twelve hours a night and taking one or two naps a day. (R. 54). Due to these limitations, Claimant does not believe she could work eight hours a day, five days a week. (R. 55).

Claimant can drive herself and drove her nephew and his wife approximately 75 miles to the airport, but got lost on the way back and relied on her GPS to navigate home. (R. 41-42). Claimant reads the newspaper and sometimes uses the computer. (R. 45-46). Claimant used to cook three meals a day, but now only cooks dinner. (R. 42). She does laundry and some cleaning, but has lost the desire to clean like she did before her stroke, explaining that she vacuums "every now and then" and sweeps and mops "a little bit." *Id.* Claimant goes out to eat from time to time, typically on Sundays. (R. 44). Claimant also attends Sunday school and church on Sunday mornings, sings at church on Sunday evenings, attends prayer service on Wednesday night and Monday night Bible study "once in a while." (R. 44).

C. **Glenn Price's Testimony at the Administrative Hearing**

Claimant's husband, Glenn Price, testified at the administrative hearing. (R. 59-63). Price explained that Claimant was no longer working with him in their construction business, because she does not have the energy to sustain the work hours and she cannot remember things. (R. 61). Price testified that Claimant gets tired attempting to do anything and takes three or four naps per day. *Id.* Claimant also forgets things she was told after only 30 minutes. (R. 62). Claimant can no longer handle the family finances, because she forgets to pay bills. *Id.* Price has noticed Claimant is easily distracted. *Id.* For example, while cooking, Claimant started watching television and forgot that she

6

was cooking. *Id.* Price does not believe Claimant could sustain work for eight hours a day, five days a week. (R. 63).

## D.     Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 64-67). After the VE's testimony regarding Claimant's past work experience (R. 64), the ALJ asked the VE to assume a hypothetical individual of the same age, education and past relevant work experience as Claimant with the following restrictions:

> [T]he right upper extremity would be limited to only occasional lifting of 20 pounds, frequent lifting of 10.
>
> This individual could sit, stand and or walk about six hours in an eight hour day. This individual can occasionally climb ramps and stairs, never ladders, ropes and scaffolds. Frequent balance, stooping, kneeling, crouching, never crawling. This individual could frequently but not consistently use the right upper extremity for fine and gross manipulations and that extremity is the dominant extremity.
>
> This individual would have to avoid concentrated exposures to hazards such as heights and machinery. This individual would be limited to simple routine repetitive tasks and by that I mean that could apply common sense and understanding to carry out instructions, furnished in written or oral diagrammatic form.
>
> This individual could interact appropriately with the public, peers and supervisors and could adapt to changes in the workplace.

(R. 65-66). The VE opined that such an individual could not perform Claimant's past relevant work. (R. 66). Next, the ALJ inquired as to whether there was any work available for such an individual, and the VE responded that such an individual could perform the work in the following positions: (1) cashier two (DOT # 211.462-010); (2) cleaner housekeeping (DOT # 323.687-014); and (3) office helper (DOT # 239.567-010). *Id.* The ALJ then posed a second hypothetical with the following further restrictions: "Unable to tolerate the stress and pressures associated with day to day work,

7

sustain attention and perform routine tasks, maintain regular attendance and be punctual with customary tolerances," and "during the typical workday this individual would have frequent symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks." (R. 67). The VE opined that such an individual is not employable. *Id.*

## V. DISCUSSION

### A.    ALJ's Evaluation of the Medical Opinions

Claimant contends that the ALJ improperly assessed the medical opinions in this case in violation of 20 C.F.R. § 404.1527, specifically by (1) failing to assign weight to the opinion of Dr. Raymond Webster; (2) giving little weight to the opinion of Dr. Frank Fleming; and (3) failing to address perceived inconsistency between the opinion of Ashley Weeks and the RFC. Pl.'s Mem. at 13-16.

#### 1.    Dr. Webster's Opinion

Claimant contends that the ALJ failed to indicate the weight he assigned to the medical opinion of Dr. Webster. When making an RFC assessment, an ALJ "must always consider and address medical source opinions." SSR 96–8P, 1996 WL 374184, *7 (July 2, 1996). Dr. Webster conducted a consultative neuropsychological evaluation of Claimant on December 15, 2010, at the request of Claimant's neurologist, Dr. Fleming. (R. 464-73). The ALJ summarized relevant findings in Dr. Webster's report as follows:

> After a neuro-psychology evaluation in December 2010, [Dr. Webster] reported that it appeared the claimant had moderate dementia from the stroke with mild impairments in semantic processing and language concept generalization, visual short-term memory capacity, and delayed memory for non-linguistic stimuli. She exhibited moderate impairment in visual and auditory information processing and in ability to encode new information presented to her orally. Her speed of visual information was also moderately impaired. Dr. Webster reported that her ability to

access and retrieve information from long-term memory following about a 16-minute time delay was severely impaired and she showed accelerated rates of forgetting in rapid information loss. Psychological testing indicated she had some emotional distress with a gross reduction in her social inhibition and restraint. He noted that she appeared easily distracted and confused with difficulty maintaining attention and concentration (Exhibit 17F).

(R. 28). In evaluating the medical opinions, the ALJ stated as follows with respect to Dr. Webster's opinion: "Dr. Webster also reported that the claimant had some social deficits and difficulty maintaining attention and concentration, but he did not give specific opinions regarding her abilities to deal with co-workers or supervisors and perform work-related tasks." (R. 29).

The ALJ did not expressly assign a weight to Dr. Webster's opinion. However, while this court has recognized that "generally an ALJ is required to explain the weight given to the opinions of medical sources in their opinions," it has also declined to find reversible error in the ALJ's failure to explicitly state the weight given to a medical opinion "where an ALJ has sufficiently considered all of the evidence in a case to permit a reviewing court to conduct a meaningful review of his decision." *Hare v. Astrue*, No. 7:08-CV-36-FL, 2009 WL 873993, at *4 (E.D.N.C. Mar. 24, 2009). Here, the ALJ thoroughly discussed Dr. Webster's findings and acknowledged Dr. Webster's conclusion that Claimant had some social deficits and difficulty maintaining attention and concentration.

Furthermore, although not explicitly stated that the ALJ afforded Dr. Webster's opinion less weight than other medical opinions, it is evident that the ALJ did so from his statement that Dr. Webster failed to discuss the extent to which the noted limitations might impact Claimant's ability to deal with co-workers or supervisors and perform work-related tasks. (R. 29). Claimant takes issue with this statement and contends that Dr. Webster did, in fact, make such findings. For

9

example, Claimant cites Dr. Webster's statement that Claimant "is likely to have difficulty getting going and even greater difficulty completing any task she may begin." (R. 471). However, as the Commissioner points out, this statement was made in the context of Dr. Webster's discussion about typical individuals with Claimant's profile who are experiencing high levels of emotional distress. Def.'s Mem. [DE-25] at 15-16; (R. 471). Moreover, Dr. Fleming noted that despite the test results indicating emotional difficulties and substantial depression, Claimant denied depression and did not think she needed an antidepressant, which casts doubt on the applicability to Claimant of Dr. Webster's noted characteristics of individuals with emotional distress. (R. 474). Accordingly, under the facts and circumstances presented here, there was no error in the ALJ's failure to explicitly assign a weight to Dr. Webster's opinion.

### 2. Dr. Fleming's Opinion

Claimant contends that the ALJ erred in assigning little weight to the opinion of Dr. Fleming, specifically taking issue with the ALJ's justification for doing so. The ALJ summarized Dr. Fleming's findings (R. 27-28) and then explained the weight attributed to Dr. Fleming's opinion as follows:

> Dr. Fleming opined that [Claimant] could not maintain sufficient attention and concentration to do even routine tasks. However, Ashley Weeks concluded that she could, in fact, understand simple instructions and perform simple, repetitive tasks. Although the claimant's husband reported that her personality changed after the stroke, Ashley Weeks described her as pleasant and cooperative with normal mood and felt she would likely relate well to co-workers and supervisors. While Dr. Fleming noted she had a "peculiar" affect and might have difficulty dealing with others, he indicated he was "uncertain" regarding her ability to handle social situations at work. The undersigned accords greater weight to Ashley Weeks' opinion because Dr. Fleming saw her, as he described, to help assist with obtaining disability. Ashley Weeks saw her twice, in a neutral position as a consulting physician for DDS. Further, the severity of the condition that Dr. Fleming attributed to the claimant is inconsistent with an individual that attends social functions several

10

times weekly, drives family to the airport many miles from her home, and helps her
husband attend to his business as testified to by the claimant.

(R. 29).

The ALJ's first reason for discounting Dr. Fleming's opinion is that it is inconsistent with Claimant's activities of daily living. *Id.* Claimant contends that the record contradicts the ALJ's findings regarding her activities. For example, Claimant points out that while she used to be active in church, she now only attends in the congregation. While Claimant may well be less active in church than she was prior to her stroke, her testimony at the administrative hearing was that she attends Sunday school and church on Sunday mornings, sings at church on Sunday evenings, attends prayer service on Wednesday night and Monday night Bible study "once in a while." (R. 44). Thus, the ALJ's observation that Claimant attends social functions several times weekly is supported by the record.

Claimant also points out that she got lost coming home after driving her nephew to the airport. However, Claimant was able to navigate home with her GPS device. (R. 41). Finally, Claimant contends that she is no longer able to provide meaningful assistance to her husband in his contracting business. While it is true that Claimant testified that she can no longer provide the support she once did to her husband, Dr. Webster noted in his report (on which Dr. Fleming relied) that Claimant can continue to perform many of her previous tasks, but the quality of her performance has been "compromised significantly." (R. 472). The ALJ concluded that Claimant could not perform her past work, and the fact that she continues to attempt to assist her husband is probative of her ability to perform other work less physically demanding and limited to unskilled, routine, repetitive tasks. Claimant also testified at the administrative hearing that she continues to cook a

11

dinner meal, clean, and do laundry, although not to the level she did before. (R. 42). Accordingly, the ALJ did not err in discounting Dr. Fleming's opinion to the extent it was inconsistent with Claimant's activities of daily living.

The ALJ's second reason for discounting Dr. Fleming's opinion is that Dr. Fleming saw Claimant to help assist her with obtaining disability. Claimant contends that there is no evidence in the record that Dr. Fleming was paid to say Claimant was disabled and that the evidence shows Dr. Fleming rendered his opinion only after obtaining a comprehensive neuropsychological exam from Dr. Webster and conducting three consultative examinations of Claimant. (R. 452-54, 458). Although Claimant is correct that there is no evidence that she paid Dr. Fleming to say Claimant was disabled, this court has previously found that a "favorable medical opinion rendered as part of someone's efforts to have herself declared disabled that runs counter to other medical evidence of record may be entitled to less weight than other medical opinions." *Hare*, 2009 WL 873993, at *4. Claimant was also examined on two occasions by Weeks, a licensed psychological associate, and both times Weeks opined that Claimant could perform simple, repetitive tasks. (R. 315, 410). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citation omitted). Further, the ALJ provided other reasons for discounting Dr. Fleming's opinion. (R. 29). Accordingly, the ALJ did not err in considering the fact that Dr. Fleming was consulted to assist Claimant in obtaining benefits as one of many factors in evaluating the opinion evidence.

Claimant also takes issue with the ALJ's failure to consider that Dr. Webster has a Ph.D. and Dr. Fleming has an M.D. and is a specialist in neurology, while Weeks possesses only a master's

12

degree. However, the opinions of Weeks were co-signed by her supervisor Dr. E.J. Burgess, who possesses a doctorate of psychology and is an acceptable medical source. (R. 315, 410); 20 C.F.R. § 404.1513(a). Accordingly, this objection lacks merit.

### 3. Weeks' Opinion and the ALJ's RFC Determination

Claimant contends that the opinion of Weeks, on which the ALJ relied, is inconsistent with the ALJ's RFC determination to the extent Weeks' opinion indicates that Claimant had memory problems and her ability to tolerate the stress associated with day-to-day work activity may be limited. Despite that Claimant's scores on the Wechsler Memory Scale - III "ranged from extremely low to average" (R. 409), Weeks concluded that Claimant "is able to understand, retain, and follow simple instructions" and "would be able to sustain attention to perform simple repetitive tasks" (R. 410), consistent with the ALJ's RFC determination (R. 26, 29). Moreover, Weeks opined that Claimant's ability to tolerate the stress of day-to-day work activity *may* be limited (R. 410), and the ALJ determined that Claimant's activities of daily living supported her ability to perform work "on a regular and sustained basis[.]" (R. 29). Thus, there is no conflict between the opinion of Weeks and the ALJ's RFC determination in this regard.

### B. ALJ's Evaluation of Claimant's Credibility and Evidence of Loss of Stamina

Claimant contends that the ALJ improperly evaluated Claimant's credibility and evidence of her post-stroke loss of stamina, resulting in an RFC not supported by substantial evidence. Pl.'s Mem. at 17-18. It is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulation 20 C.F.R. § 404.1529(a) provides

13

the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *See Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3.

Here, the ALJ found that Claimant had medically determinable impairments reasonably capable of causing her alleged symptoms, but concluded Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. (R. 26). In reaching this conclusion, the ALJ noted a number of factors, including Claimant's ability to independently complete activities of daily living. (R. 29). While Claimant argues that her ability

14

to engage in these activities is not inconsistent with an individual with poor memory, her activities are inconsistent with an individual suffering from persistent fatigue. As discussed above, the ALJ's findings and conclusions regarding Claimant's activities of daily living, *e.g.,* attending church several times a week, doing some cooking and cleaning, doing laundry, and driving a long distance, are supported by substantial evidence in the record. *See supra* § A.2. Claimant also reported exercising thirty minutes to an hour five days a week. (R. 441, 477). While Claimant may not be able to do these activities with the same vigor as prior to her stroke, the fact that she continues to perform such tasks suggests she is capable of working. *See Tarpley v. Astrue*, No. 5:08-CV-271-FL, 2009 WL 1649774, at *3, 11 (E.D.N.C. June 1, 2009) (adopting memorandum and recommendation, which found that ability to care for the home and to exercise was substantial evidence supporting the ALJ's finding that claimant's statements of debilitation were not entirely credible). Furthermore, the ALJ recognized Claimant's memory deficits and accordingly limited Claimant to performing only unskilled, routine, repetitive tasks. (R. 29). Therefore, the ALJ did not err in assessing Claimant's credibility.

## C.     Appeals Council's Failure to Consider Evidence

Claimant finally contends that the Appeals Council failed to consider new and material evidence in the form of additional records from Dr. Fleming and a comprehensive vocational rehabilitation evaluation. Pl.'s Mem. at 18-20. Claimant submitted to the Appeals Council additional medical records from Dr. Fleming dated May 17, 2011 (R. 493), and a June 1, 2011 report from Stephen Carpenter, Rehabilitation Counselor (R. 501-16). (R. 2). The Appeals Council looked at the documents and determined that because the ALJ's decision was through September 30, 2010, Claimant's date last insured, and the new information was about a later time, it did not affect the

15

disability decision. *Id.*

The regulations provide that "[t]he Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.976(b)(1). The Appeals Council need not, however, review nor consider new evidence that relates only to a time period after the ALJ issues his decision. *See id.* ("If [the claimant] submit[s] evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence . . . .").

When a claimant submits evidence that has not been presented to the Commissioner, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* Under sentence-six, "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Nuckles v. Astrue*, No. 7:09-CV-13-FL, 2009 WL 3208685, at *4 (E.D.N.C. Sept. 14, 2009) (explaining a sentence-six remand requires the evidence be new and material and there must be good cause for failing to submit the

evidence earlier).

Evidence is new if it is not duplicative or cumulative of that which is already contained in the record. *Wilkins v. Sec'y., Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (citations omitted). Evidence is material if it relates to the period on or before the date of the ALJ's decision, 20 C.F.R. § 404.970(b), and there is a "reasonable possibility that the new evidence would have changed the outcome" of the case. *Wilkins*, 953 F.2d at 96 (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir.1985)). Finally, as for good cause, the courts have recognized that in crafting the statute governing remand, it was Congress's intent to permit remand pursuant to sentence six on a very limited basis. *See Rogers v. Barnhart*, 204 F. Supp. 2d 885, 892 (W.D.N.C. 2002) ("'Congress made it unmistakably clear' that it intended to limit remands for 'new evidence.'") (quoting *Melkonyan*, 501 U.S. at 99-100)). The plaintiff bears the burden in proving that the requirements of sentence six are met. *Id.*

Dr. Fleming saw Claimant on May 17, 2011, approximately three weeks after the ALJ's decision and approximately seven months after Claimant's date last insured. Dr. Fleming's treatment notes pertain to Claimant's condition at that time (R. 493) and, thus, do not relate to "the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.976(b)(1). Accordingly, the materiality requirement is not met and the Appeals Council did not err in declining to consider the May 17, 2011 medical record from Dr. Fleming.

Carpenter evaluated Claimant on June 1, 2011, approximately five weeks after the ALJ's decision and approximately eight months after Claimant's date last insured. Carpenter reviewed and summarized Claimant's medical records and administered a battery of tests, concluding that she was not employable due to, among other things, cognitive deficits affecting her ability to sustain memory,

17

concentration, and attention and significant fatigue and loss of stamina. (R. 503-11). This evidence is neither new nor material. To the extent Carpenter summarizes Claimant's medical records and the findings therein, that information is not new and was considered by the ALJ. *See Brittain v. Sullivan*, 956 F.2d 1162, 1992 WL 44817, at *5 (4th Cir. Mar. 11, 1992) (concluding that evidence presented in a supplemental report was not new where it was "consistent with all prior testimony" and "shows no conclusions that were not already expressed by other doctors."). With respect to the results from the battery of tests administered by Carpenter, those test results are not material, because they reflect Claimant's condition at the time of testing. *Id.* (finding no error in Appeals Council's refusal to consider supplemental information on the grounds that it indicated the condition of the claimant at the time of the examination and not as of the date last insured); *Jones v. Astrue*, No. 4:11-CV-146-FL, 2012 WL 3822204, at *4 (E.D.N.C. June 5, 2012) (finding evidence was not new or material where "the information therein relates to a time over six months after the ALJ's decision and no information is contained within these records relating the findings therein to Plaintiff's condition during the relevant time period."), *mem. and recommendation adopted*, 2012 WL 3834924 (E.D.N.C. Sept. 4, 2012). Furthermore, there is no reasonable probability that Carpenter's report would have changed the ALJ's determination, where the findings are largely cumulative of other evidence in the record with regard to Claimant's memory problems and fatigue, which the ALJ found not to preclude Claimant from performing any work based in part on her reported activities of daily living. (R. 29). Accordingly, the Appeals Council did not err in declining to consider the supplemental information.

## VI. CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment

on the Pleadings [DE-22] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be GRANTED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the 12th day of December 2013.

Robert B. Jones, Jr.
United States Magistrate Judge